Payam Shahian (SBN 228406)
pshahian@slpattorney.com
Christine J. Haw (SBN 289351)
chaw@slpattorney.com
Matthew Pardo (SBN 315879)
mpardo@slpattorney.com
Eliana Amirian (SBN 341094)
eamirian@slpattorney.com
**STRATEGIC LEGAL PRACTICES, APC**
1888 Century Park East, Floor 19
Los Angeles, CA 90067
Telephone:   (310) 929-4900
Facsimile:   (310) 943-3838

Attorneys for Plaintiff,
JOSEPH GAMATY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH GAMATY,<br><br>              Plaintiff,<br><br>     v.<br><br>BMW OF NORTH AMERICA, LLC; and DOES 1 through 10, inclusive,<br><br>              Defendants. | Case No.: 2:21-cv-01063-RGK-AFMx<br><br>*Case Initiated: February 5, 2021*<br><br>Hon. R. Gary Klausner<br><br>**PLAINTIFF'S MOTION FOR ATTORNEY FEES, COSTS, AND EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:     June 6, 2022<br>Time:     8:30 a.m. |

TABLE OF CONTENTS

I.   INTRODUCTION .................................................................................. 1

II.  STATEMENT OF FACTS ................................................................... 4

    A.   BMW Refuses to Provide Plaintiff With Relief Under the Law............ 4

    B.   After BMW Initially Denies Liability, Plaintiff's Counsel Diligently Prepares This Matter for Trial ............................................................... 5

    C.   BMW's Lowball, Invalid Rule 68 Offer................................................ 7

III. LEGAL ANALYSIS............................................................................ 7

    A.   Plaintiff is the Prevailing Party ........................................................... 7

    B.   Plaintiff's Lodestar Fees are Reasonable............................................. 9

        1.   Plaintiff's Counsel's Hourly Rates are Reasonable ..................... 10

        2.   Plaintiff's Counsel's Billable Hours are Reasonable ................... 12

    C.   A Lodestar Multiplier Enhancement of 1.35 is Warranted.................. 15

        1.   Plaintiff's Counsel Obtained an Excellent Outcome.................... 15

        2.   The Risks Posed by This Litigation Were Substantial................. 16

    D.   Plaintiff is Entitled to Costs and Litigation Expenses ........................ 17

IV.  CONCLUSION.................................................................................. 18

## TABLE OF AUTHORITIES

### CASES

*Arntz Cont. Co. v. St. Paul Fire & Marine Ins. Co.* 47 Cal.App.4th 464 (1996) 19

*Bussey v. Affleck* (1990) 225 Cal.App.3d 1162 ................................................. 19

*Cazares v. Saenz*, 208 Cal. App. 3d 279 (1989) ................................................ 18

*Drouin v. Fleetwood Enterprises*, 163 Cal. App 3d 486 (1985) .......................... 9

*Estate of Trynin,* 49 Cal.3d 868 (1989) ................................................................ 8

*Forouzan v. BMW of N. Am., LLC*, 390 F. Supp. 3d 1184 (2019) ..................... 13

*Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140 (2006) ......... 9, 16

*Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553 (2005) .............................. 17

*Holcomb v. BMW of North America, LLC*, (S.D. Cal. Feb. 14, 2020) ............... 14

*Horsford v. Board of Trustees of Cal. State Uni.*, 132 Cal. App. 4th 359 (2005) 13

*In re Vitamin Cases*, 110 Cal. App. 4th 1041 (2003) ........................................ 16

*Jensen v. BMW of North America*, 35 Cal. App. 4th 112 (1995) ........................ 19

*Margolin v. Regional Planning Com.*, 134 Cal. App. 3d 999 (1982) ................. 11

*Martino v. Denevi*, 182 Cal. App. 3d 553 (1986) .............................................. 13

*Niederer v. Ferreira*, 189 Cal. App. 3d 1485 (1987)........................................... 9

*Ortega v. BMW of N. Am.*, LLC,, 2019 WL 6792798 (C.D. Cal. Oct. 24, 2019) 14

*Serrano v. Unruh, 32 Cal. 3d 621 (1982)*............................................................. 8

*Warren v. Kia Motors America, Inc.*, 30 Cal. App. 5th 24 (2018) .................... 19

*Wohlgemuth v. Catepillar, Inc.*, 207 Cal. App. 4th 1252 (2012) ........................ 8

*Zargarian v. BMW of N. Am.*, 442 F. Supp. 3d 1216 (C.D. Cal. Mar. 3, 2020)... 3, 12, 14

### STATUTES

Cal. Civ. Code § 1794(d)............................................................................. 1, 5, 8

### OTHER AUTHORITIES

Leubsdorf, *The Contingency Factor in Attorney Fee Awards*, 90 Yale L.J. 473 (1981).................................................................................................................. 17

ii

Plaintiff's Motion for Attorney Fees - Case No.: 2:21-cv-01063-RGK-AFMx

## I. INTRODUCTION

This is a motion for statutorily authorized attorney fees, costs, and expenses following a complete victory by way of jury verdict for Plaintiff Joseph Gamaty ("Plaintiff") in this "Lemon Law" lawsuit under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1794(d) ("SBA"). Plaintiff obtained this victory after Defendant BMW of North America, LLC ("BMW" or "Defendant") unsuccessfully mounted a full defense, which included denying all liability until the jury found in Plaintiff's favor after one year of litigation. BMW sent a total of three attorneys, including Partner Daniel R. Villegas, who "recently obtained a 12-0 defense verdict for Ford Motor Company after a five-week trial where Plaintiff sought a damage recovery in the high eight figures"[1]; Associate, Ashley E. Oaks, who "has focused primarily on defending automobile manufacturers in consumer warranty disputes in all phases of litigation up to and including trial" since joining Lehrman Law Group in 2015[2]; and Associate, Andrew Stefatos, who "has focused on warranty defense for auto manufacturers" since joining Lehrman Law Group in 2018.[3] Against three attorneys with such extensive litigation experience, Plaintiff's counsel Christine Haw and Matt Pardo obtained a unanimous jury verdict in the amount of $37,660.02.

Notably, this action would not have been necessary in the first instance had BMW agreed to honor its Lemon Law obligations **before Plaintiff filed his Complaint**. BMW knew that Plaintiff's 2018 BMW 750i, vehicle identification number WBA7F0C56JGM22557 ("Vehicle") suffered from debilitating engine and electrical defects. Additionally, BMW was specifically aware of Plaintiffs' extensive repair history in which Plaintiff was forced to take the Vehicle to the dealership no fewer than seven times for repairs. Yet, when Plaintiff called BMW to request that it

---

[1] https://lvcdlaw.com/attorneys/daniel-r-villegas/
[2] https://lvcdlaw.com/attorneys/ashley-e-oaks/
[3] https://lvcdlaw.com/attorneys/andrew-stefatos/

pay restitution consistent with its affirmative obligation under the Lemon Law, BMW failed to offer relief. This refusal is unsurprising, however, in light of BMW's general strategy for litigating Lemon Law cases. *See, e.g.*, *Zargarian v. BMW of N. Am., LLC*, 442 F. Supp. 3d 1216, 1227-30 (C.D. Cal. Mar. 3, 2020).

BMW did not deviate from this strategy here. To wit, BMW refused, without justification, to pay restitution prior to litigation. Then, after litigation commenced, BMW served an invalid Rule 68 offer in the amount of $25,000 to Plaintiff and $25,000 for fees and expenses less then 10 days prior to trial, which would not have even been enforceable had Plaintiff accepted it.[4] In addition, throughout this litigation, BMW continued to deny all liability, forcing Plaintiff to prepare for—and litigate this case through—trial. Plaintiff's efforts included propounding and responding to discovery; taking and/or defending at least four depositions of Plaintiff and expert witnesses; reviewing and analyzing thousands of pages of documents, including, but not limited to, repair orders and purchase documents, as well as internal BMW documents, some of which were admitted at the time of trial; briefing various motions (moving papers, oppositions, and/or replies); preparing for and attending the Final Pretrial Conference; preparing trial documents, including drafting eight motions in *limine* and opposing four motions in *limine*; successfully filing and opposing partial motions for summary judgement, a successful motion to exclude BMW's expert opinions that were first raised by BMW's expert during his deposition but knowingly withheld from his expert report; selecting a jury; and conducting trial, at the conclusion of which Plaintiff successfully obtained a unanimous verdict. Yet having forced Plaintiff to litigate in this manner, BMW can scarcely claim that Plaintiff's efforts were "unnecessary" or his fees "unreasonable."

Other courts in this district, as well as other district courts in the State of

---

[4] *See* Fed. R. Civ. P. 68 ("At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued.").

California, routinely award Plaintiff's counsel its requested fees under similar circumstances (*i.e.*, Lemon Law cases against automobile manufacturers). Most recently, the court in *Rahman v. FCA US LLC*, No. 2:21-CV-02584-SB-JC, --- F. Supp. 3d ---, 2022 WL 1013433, at *4 (C.D. Cal. Mar. 29, 2022), approved the requested calendar year 2021 rates of Strategic Legal Practices, APC ("SLP") attorneys and one law clerk ranging from $285/hr to $695/hr (*see* Shahian Decl. ¶ 35, Exhibit 28); the court in *Zargarian v. BMW of N. Am., LLC,* 442 F. Supp. 3d 1216, 1227-30 (C.D. Cal. Mar. 3, 2020), awarded SLP 100% of its requested lodestar and approved its requested rates ranging from $335/hr to $650/hr (*see* Shahian Decl. ¶ 20, Exhibit 13); and the court in *Jurosky v. BMW of N. Am., LLC*, No. 19CV706 JM (BGS), 2020 WL 5033584 (S.D. Cal. Aug. 25, 2020), approved the rates of SLP's attorneys, from $350/hour to $550/hour and awarded 100% of the requested lodestar (*see* Shahian Decl. ¶ 25, Ex. 18). *See also, e.g.*, *Abraham Forouzan v. BMW of N. Am., LLC*, No. 2:17-cv-03875-DMG-GJS), 2019 WL 856395 (C.D. Cal. Nov. 11, 2019) (approving SLP attorney rates of 350/hr.-$595/hr.); *Covarrubias v. Ford Motor Co.*, No. 19-cv-01832-EMC, 2021 WL 3514095 (N.D. Cal. Aug. 10, 2021) (granting 100% of Plaintiff's requested lodestar amount as well as SLP's rates between $385/hr. and $550/hr.). These rulings underscore the reasonableness of counsel's lodestar here.

Accordingly, the only issue here is whether the requested fee award of $272,577.86. This amount consists of (1) $181,031.00 in attorney fees for Strategic Legal Practices, APC ("SLP"); (2) a 1.35 multiplier enhancement on the attorney fees (or $63,360.85); (4) $22,686.01 in costs incurred by SLP; and (4) an additional $5,500.00 for Plaintiff's counsel to review Defendant's Opposition, draft the Reply, and attend the hearing on this Motion (though counsel expects to incur over $5,500.00 for Plaintiff's counsel to review Defendant's Opposition, draft the Reply, and attend the hearing on this Motion (though counsel expects to incur over $5,500.00), as reasonably anticipated to review BMW's Opposition, draft the Reply,

and attend the hearing on this Motion. As explained below, Plaintiff's fee request is manifestly reasonable.

## II.   STATEMENT OF FACTS

In a number of cases that Plaintiff's counsel have litigated against BMW and its counsel, BMW appears to have adopted the following strategy: refuse to pay restitution for the lemon prior to litigation; extend lowball and/or invalid settlement offers during litigation; deny liability throughout the case; force the matter to trial unless Plaintiff is willing to accept a lowball offer; and then repeatedly and loudly proclaim, in opposing the fee motion, that Plaintiff's fees, costs, and expenses were unnecessarily incurred because BMW was willing to pay some amount of "restitution" for the lemon all along. These arguments are demonstrably false. Among other things, BMW's Rule 68 Offer was not only invalid but also considerably lower than the amount recovered at trial. *See, e.g.*, *Zomorodian v. BMW of N. Am., LLC*, No. CV175061DMGPLAX, 2019 WL 6534513, at *10 (C.D. Cal. July 23, 2019) (granting motion for attorney fees in amount of $213,447.50); *Forouzan v. BMW of N. Am.*, LLC, No. CV173875DMGGJSX, 2019 WL 856395, at *9 (C.D. Cal. Jan. 11, 2019) (awarding Plaintiff $25,058.79 in damages and granting Plaintiff's counsel SLP reasonable attorney fees in the amount of $215,560.50).

### A.   BMW Refuses to Provide Plaintiff With Relief Under the Law

On or about April 11, 2018, Plaintiff leased a 2018 BMW 750i vehicle, which was manufactured by BMW, for approximately $38,758.20. (Amirian Decl. ¶ 3, Ex. 1.) As a result of engine and electrical defects, Plaintiff was forced to take the Vehicle to the dealership at least seven times for repairs. (*Id*. ¶¶ 7-13.) Frustrated with the dealer's inability to repair the Vehicle, Plaintiff contacted Defendant on or about September 30, 2020, requesting a buyback under the SBA due to the ongoing problems with the vehicle. (*Id.* ¶ 14). Despite knowledge of the Vehicle's defects and its own failure to repair the Vehicle to conform with applicable warranties,

4

BMW refused to buy back Plaintiff's Vehicle as required by law. (*Id.*)

**B.    After BMW Initially Denies Liability, Plaintiff's Counsel Diligently Prepares This Matter for Trial**

Plaintiff filed this lawsuit on February 5, 2021, alleging various violations of the SBA (*i.e.*, California Civil Code § 1794(d)). (Amirian Decl. ¶ 15; Dkt. No. 1.) On or about March 10, 2021, BMW filed its Answer, denying all liability and asserting various affirmative defenses. (*See* Pardo Decl. ¶ 16; Dkt. No. 9-1.) During litigation—which BMW needlessly prolonged—Plaintiff incurred attorney fees, costs, and expenses for various tasks, including, notably:

- Preparing and filing the Complaint. (Pardo Decl. ¶ 15.)

- Reviewing Defendant's Answer to Plaintiff's Complaint. (*Id*. ¶ 16.)

- Filing a Joint Report Rule 26(f) Discovery Plan (*Id*. ¶ 18.)

- Preparing and serving Initial Disclosures. (*Id*. ¶ 19.)

- Reviewing Defendant's Initial Disclosures. (*Id*. ¶ 19.)

- Reviewing and responding to Defendant's discovery requests to Plaintiff, including Requests for Production, Requests for Admission, Interrogatories, and a Notice of Deposition of Demand to Produce Documents at Deposition to Plaintiff. (*Id*. ¶¶ 21, 23.)

- Serving an Objection to Plaintiff's Notice of Deposition. (*Id*. ¶ 22.)

- Serving a Notice of Deposition of BMW and Request for Production of Documents under Rules 30(b)(6) and 30(b)(2), respectively. (*Id*. ¶ 24.)

- Reviewing Defendant's Preliminary Expert Report. (*Id*. ¶ 27.)

- Defending Plaintiff's Deposition. (*Id*. ¶ 31.)

- Preparing and filing eight motions in *limine*. (*Id*. ¶ 35.)

- Preparing and filing oppositions to four BMW motions in *limine*. (*Id*. ¶ 36.)

- Taking the deposition of BMW's Rule 30(b)(6) witness Mark Nicastro. (*Id.* ¶ 49.)

- Filing and opposing Motions for Partial Summary Judgment as to Aggregation of Repair Attempts filed by Plaintiff. (*Id.* ¶ 57.)

- Reviewing Defendant's invalid Rule 68 served seven days prior to trial, offering Plaintiff's $25,000 to dismiss the case and an additional $25,000 for attorney's fees, costs, and expenses. (*Id.* ¶ 67.)

- Reviewing and filing an Opposition to Defendant's *Ex Parte* Application to Compel Completion of the Deposition of Plaintiff's Expert Witness; the Court denied Defendant's *Ex Parte* Application. (*Id.* ¶ 69.)

- Filing a Statement of the Case and Proposed Special Jury Verdict Form. (*Id.* ¶ 70.)

- Preparing for and attending trial from March 8, 2022 to March 11, 2022 (*Id.* ¶ 76.)

In sum, Plaintiff's efforts were reasonably necessary to establish BMW's liability in this case and to protect against surprise at trial. The outstanding result achieved here is directly attributable to Plaintiff's counsel's diligence and efforts, which finally forced BMW to acknowledge its liability. In its opposition, BMW may argue that Plaintiff excessively litigated this case. The facts, however, plainly undermine such a narrative given that Plaintiff's litigation efforts were geared toward responding to BMW's litigation tactics and/or proving liability in this case.[5] *See Goglin v. BMW of N. Am., LLC*, 4 Cal. App. 5th 462, 473 (2016) ("[U]ntil the case actually settled, Goglin had to conduct discovery and prepare to prove liability on her varied claims with their varied elements. She also had to be prepared to

_____

[5] See also *Peak-Las Positas Partners v. Bollag*, 172 Cal. App. 4th 101, 114 (2009) ("A defendant cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response."); *Stokus v. Marsh*, 217 Cal. App. 3d 647, 654 (1990) ("Parties who litigate with no holds barred in cases such as this, in which the prevailing party is entitled to a fee award, assume the risk they will have to reimburse the excessive expenses they force upon their adversaries.").

counter the numerous affirmative defenses raised in the answers to her complaint. We, therefore, cannot conclude the court abused its discretion in finding the time spent by Goglin's counsel on litigation activities was reasonable.").

Accordingly, Plaintiff requests a total award of $270,976.09 in attorney fees, costs, and expenses, as explained herein. (Shahian Decl. ¶¶ 60, Ex. 30.)

### C.    BMW's Lowball, Invalid Rule 68 Offer

As noted above, BMW may argue that its March 1, 2022 Rule 68 Offer cuts off Plaintiff's right to recover any fees incurred after the offer. It is of note that this was the first offer made throughout the course of litigation, and was made only seven days prior to the start of trial. Additionally, Plaintiff recovered a total of $37,660.02, which exceeds, by a wide margin, BMW's Rule 68 Offer of $25,000. Accordingly, Plaintiff beat BMW's offer.

## III.    LEGAL ANALYSIS

### A.    Plaintiff is the Prevailing Party

Under California law, if a buyer prevails in an action under the SBA, she may recover the aggregate amount of costs and expenses, *including attorney fees* based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action. Cal. Civ. Code § 1794(d) (emphasis added). *See Wohlgemuth v. Caterpillar, Inc.*, 207 Cal. App. 4th 1252, 1262 (2012) ("[T]he provision for recovery of costs and attorney fees in [Civil Code] section 1794(d) is an important aspect of this consumer protection, and without it many would not be financially able to pursue a remedy."). Such mandatory recoverable fees and costs include those "necessary to establish and defend th[is] fee claim . . . ." *Serrano v. Unruh*, 32 Cal. 3d 621, 639 (1982); *Robertson*, 144 Cal. App. 4th at 817 (fees for fee-and-cost motion) (remanded on other grounds); *Estate of Trynin,* 49 Cal.3d 868, 874 (1989) ("Where the right to counsel fees is based on statute, recovery for fee-related services has been consistently allowed."). Plaintiff is entitled to recover her fees in connection with

this Motion.

In short, Plaintiff is the prevailing party for the purposes of attorney fees. Pursuant to the SBA, an award of attorney fees and costs to Plaintiff as the prevailing party is <u>mandatory</u>:

> If the buyer prevails in an action under this section, the buyer *shall* be allowed by the court to recover as part of the judgment a sum *equal to the aggregate amount of costs and expenses, including attorney's fees* based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action.

Cal. Civ. Code. § 1794(d).

Moreover, California courts have consistently "rejected the notion the fee award must be proportionate to the amount of damages recovered." *Niederer v. Ferreira*, 189 Cal. App. 3d 1485, 1508 (1987); *Drouin v. Fleetwood Enterprs.*, 163 Cal. App 3d 486, 493 (1985) ("[A]n attorney's fee is to be based upon actual time expended rather than being tied to any percentage of the recovery. This requirement is designed to make the pursuit of consumer rights involving inexpensive consumer products economically feasible... The trial court did not err in calculating attorneys fees based on actual time expended."). Because Plaintiff is suing "under consumer protection statues involving mandatory fee-shifting provision, the legislative policies are in favor of [] recovery of all attorney fees reasonably expended, without limiting the fees to a proportion of [] actual recovery." *Graciano v. Robinson FCA Sales, Inc.*, 144 Cal. App. 4th 140, 164 (2006). *See also Reynolds v. Ford Motor Co.*, 47 Cal. App. 5th 1105 (2020) ("Many statutory fee-award provisions begin with the lodestar method but are governed by the specific statutory requirement that the final fee award be 'reasonable' in nature. No such requirement is found in the Song-Beverly Act. The fee award must be based on the court's calculation of the 'actual time expended ... determined by the court to have been reasonabl[y] incurred.' [(§ 1794(d).)] The legislature did not include a requirement that the court also determine

[whether] the fees are reasonable in amount. Had the legislature intended such a requirement, it could easily have so stated…The court's review of the overall reasonableness of the attorney fees is, thus, restricted by the specific language in the fee award provision of the Song-Beverly Act.").

### B.    Plaintiff's Lodestar Fees are Reasonable

The lodestar method is used to determine reasonable attorney fees. *Moreno v. City of Sacramento,* 534 F.3d 1106, 1111 (9th Cir. 2008). *See also Ketchum v. Moses*, 24 Cal. 4th 1122, 1135 (2001) (California Supreme Court endorsing lodestar method as prevailing method for statutory fee awards); *Syers Properties III, Inc. v. Rankin*, 226 Cal. App. 4th 691, 698 (2014) ("*Ketchum v. Moses* 'reaffirmed the primacy of the lodestar method for *all* fee-shifting statutes....'") (emphasis in original).

California's lodestar/multiplier method uses a two-step process for calculating fees:

Step One: The trial court determines a lodestar value for the fees by multiplying the time reasonably spent by Plaintiff's counsel on the case by a reasonable hourly rate. *See In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 556-57 (2009).

Step Two: The trial court may then adjust or enhance the lodestar by applying a multiplier to take into account the contingent nature and risk associated with the action, as well as other factors, such as the degree of skill required and the results achieved. *Id*.; *see also Ketchum*, 24 Cal. 4th at 1130, 1137 (appellate court erred in concluding it lacked authority to enhance prevailing party's lodestar). Likewise, the Ninth Circuit utilizes the lodestar method for calculating reasonable attorneys' fees, "multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Welch v. Metro Life Ins. Co.*, 480 F. 3d 942, 945 (9th Cir. 2007). The lodestar approach "anchors the trial court's analysis to an objective determination of the attorney's services, ensuring the amount awarded is not

arbitrary." *Graciano*, 144 Cal. App. 4th at 154 (emphasis added).[6]

### 1.    Plaintiff's Counsel's Hourly Rates are Reasonable

The hours billed by counsel are to be multiplied by a "reasonable hourly rate" to generate the lodestar. *In re Consumer Privacy Cases*, 175 Cal. App. 4th at 556. In determining an appropriate hourly rate, the trial court should apply rates commensurate with the "hourly prevailing rate for private attorneys in the community conducting noncontingent litigation of the same type." *Ketchum*, 24 Cal. 4th at 1133. Evidence of hourly rates sought by and awarded to the same law firm in other cases, as well as experience of counsel, are "obviously relevant" to the attorney fees determination. *Margolin v. Regional Planning Com.*, 134 Cal. App. 3d 999, 1005-06 (1982).[7]

---

[6] Plaintiff expects that BMW will, in its Opposition, attempt to mislead the Court by citing *Nightingale v. Hyundai Motor America*, 31 Cal. App. 4th 807 (1994), and *Levy v. Toyota Motor Sales, USA, Inc.*, 4 Cal. App. 4th 807 (1992), in support of its argument that the lodestar/multiplier approach does not apply and that the Court should reduce Plaintiff's requested fees. Such an argument would profoundly misrepresent the law applicable to contingent fee cases. Neither *Nightingale* nor *Levy* involved a contingent fee agreement, as here. (*See* Shahian Decl. ¶ 64 [SLP took this case on a contingency basis].) Rather, in *Nightingale*, the plaintiff's attorney represented the consumer on an hourly basis and then sought to obtain a rate higher than the rate she actually charged, claiming this was proper under the lodestar method. The appellate court rejected the higher rate. Similarly, *Levy* also involved an hourly rate agreement rather than a contingent fee agreement.

The differences between contingent fee agreements and hourly rate agreements were made clear in Robertson, which expressly ruled that *Nightingale* and *Levy* do not apply to contingent fee agreements. *Robertson*, 144 Cal. App. 4th at 818. Instead, the *Robertson* court held that the correct method for calculating a fee award in a contingent fee case is the lodestar/multiplier approach. See id. Accordingly, the Court should disregard any argument by BMW that *Nightingale* and *Levy* articulate the applicable standard in a contingent fee context

[7] Plaintiff's counsel, in presenting evidence of her basic hourly rates, need not "explain the basis on which those hourly rates were awarded to counsel in other cases, the nature of other litigation, its difficulty and other factors which might have affected the award." The basic rates merely are the starting point of a fee award calculation. *Margolin*, 134 Cal. App. 3d at 1005. Consideration of the other factors listed only occurs *after* the court fixes the hourly rate and the

Plaintiff's Motion for Attorney Fees - Case No.: 2:21-cv-01063-RGK-AFMx

In the absence of contrary evidence, a moving party's showing of rates that have been upheld "compel[] a finding that the requested hourly rates were within the reasonable rates for purposes of setting the base lodestar amount." *Graciano*, 144 Cal. App. 4th at 156. Plaintiff's counsel, in presenting evidence of her basic hourly rates, need not "explain the basis on which those hourly rates were awarded to counsel in other cases, the nature of other litigation, its difficulty and other factors which might have affected the award." The basic rates merely are the starting point of a fee award calculation. *Margolin*, 134 Cal. App. 3d at 1005. Consideration of the other factors listed only occurs *after* the court fixes the hourly rate and the number of hours spent, as part of the analysis to determine whether the total fees should be modified. *Id.* (citing *Serrano*, 20 Cal. 3d at 49).

The hourly rates for the attorneys and law clerks who worked on this case are (1) Christine J. Haw (2022 rate of $490.00/hr. and 2021 rate of $465.00/hr); (2) Eliana Amirian (2022 rate of $375.00/hr.); (3) Eve Canton (2022 rate of $295.00/hr. and 2021 $285.00/hr.); (4) Gregory Yu (2022 rate of $550.00/hr.); (5) Jason Clark (2022 rate of $565.00/hr.); (6) Kareem Aref (2020 rate of $410.00/hr.); (7) Karin Kuemerle (2022 rate of $595.00/hr.); (8) Mark Gibson (2021 rate of $475.00/hour); (9) Matthew Pardo (2021 rate of $410.00/hr. and 2022 rate of $395.00/hr.); (10) Nadine Alsaadi (2022 rate of $350.00/hr.); and (11) Oliver Tomas (2021 rate of $610.00/hr.).

These rates are appropriate given the relative experience and qualifications of these attorneys. (*See* Shahian Decl. ¶¶ 36-58.) They are similar to the rates that this District Court and other California District Courts have awarded some of these attorneys in vehicle defect cases. (*Id.*) *See also Rahman v FCA* (approving Ms. Amirian's 2022 rate of $375/hr.; Mr. Clark's 2022 rate of $565/hr.; Mr. Gibson's rate of $450/hr.; and Mr. Pardo's rate of $390/hr.); *Jose Adrian Franco Medina v.*

number of hours spent, as part of the analysis to determine whether the total fees should be modified. *Id.* (citing *Serrano*, 20 Cal. 3d at 49).

Plaintiff's Motion for Attorney Fees - Case No.: 2:21-cv-01063-RGK-AFMx

*Kia Motors Am., Inc.*, Los Angeles Super. Ct., Case No. 19STCV02985 (April 29, 2021) (approving Ms. Haw's 2018 rate of $375/hr. and 2019 rate of $410/hr.); *Zargarian v. BMW of N. Am., LLC*, 442 F. Supp. 3d 1216, 1227 (C.D. Cal. Mar. 3, 2020) (approving Mr. Shahian's 2020 rate of $650/hr.); *Forouzan v. BMW of N. Am., LLC et al*, 2019 WL 856395, *4 (C.D. Cal. Jan. 11, 2019) (approving Ms. Dolin's 2018 rate of $375/hr.); *Jurosky v. BMW of N. Am., LLC*, No. 19CV706 JM (BGS), 2020 WL 5033584, at *1 (S.D. Cal. Aug. 25, 2020) (Shahian Decl. ¶ 25, Ex. 18) (approving Ms. Dolin's 2018 rate of $375/hr.); and *Covarrubias v. Ford Motor Co.*, No. 19-cv-01832-EMC, 2021 WL 3514095 (N.D. Cal. Aug. 10, 2021) (approving Mr. Clark's 2021 rate of $550/hr. and Mr. Gibson's 2018 rate of $435/hr.).

2.    <u>Plaintiff's Counsel's Billable Hours are Reasonable</u>

Plaintiff's fee recovery is based on the approximately 405.70 hours[8] spent by her attorneys litigating this case through this motion. As evidenced by the billing records submitted to the Court, the time spent is reasonable. (Shahian Decl. ¶ 60, Ex. 30.) These billing records reflect the actual time and descriptions of services billed in connection with the litigation of this action by Plaintiff's counsel and have been audited to remove any entry that may be duplicative, redundant, unnecessary, or otherwise. (*Id.*) Although the submission of such detailed time records is not necessary under California law, *see Martino v. Denevi*, 182 Cal. App. 3d 553, 559 (1986); *Sommers v. Erb*, 2 Cal. App. 4th 1644, 1651 (1992), if submitted, such records "are entitled to credence in the absence of a clear indication the records are erroneous," *Horsford v. Board of Trustees of California State University*, 132 Cal. App. 4th 359, 396 (2005).

---

[8] Although eleven attorneys from SLP worked on this case, four attorneys (Ms. Haw, Mr. Pardo, Ms. Canton, and Mr. Yu) together accounted for about 318.5 of the 405.7 hours of the time expended by SLP in this case (**over 78%**), with the other attorneys performing non-duplicative tasks, such as Ms. Kuemerle revising the Amended Complaint and Mr. Aref drafting motions in *limine*.

As detailed in the accompanying declarations, Plaintiff's counsel's efforts were prompted by BMW's blanket denial of liability and delay tactics. Ultimately, absent Plaintiff's counsel's efforts, such a favorable outcome likely would not have been achieved.

In its Opposition, BMW will likely contend that Plaintiff "overstaffed" this case or "duplicated" efforts. As a threshold matter, however,

> The court is not in a position … to determine the appropriate number of attorneys assigned to this particular case given that it is not privy to the inner workings of Plaintiff's counsel's law firm. Also, for better or worse, the use of a large number of attorneys in Song-Beverly Act (similar to the MMWA) cases appears relatively common. *See Ortega v. BMW of N. Am., LLC,* No. 2:18cv6637 R (SK), 2019 WL 6792798, at *3 (C.D. Cal. Oct. 24, 2019) (noting that defendant used 15 attorneys and that is was "not uncommon" to use a large number of attorneys in lemon law cases). On her face, the billing records do not show that a significant amount of time was unreasonably spent getting ten attorneys up-to-speed on this case. *Id.* ("This Court declines to admonish the use of a larger number of attorneys, as it appears there was no duplicative billing[.]"). As discussed below, this case involved extensive discovery and there is no obvious indication that a fewer number of attorneys would have generated significantly fewer hours. The efficiency gained from specializing in these types of cases may have allowed Plaintiff's attorneys to familiarize themselves with this case with minimal effort. Finally, Plaintiff's counsel submitted a declaration, under the penalty of perjury, that all fees were entered contemporaneously, were not adjusted upward, and were not duplicative, redundant, or unnecessary. [] The court has no compelling reason to doubt the honesty or judgment of Plaintiff's counsel regarding the number of attorneys necessary to litigate this case.

*Holcomb v. BMW of N. Am., LLC*, 2020 WL 759285, at **2-3 (S.D. Cal. Feb. 14, 2020) (finding reasonable 2018-2019 hourly rates between $355 and $665). (*See* Shahian Decl. ¶ 64, Ex. 26.)

More important, any "overstaffing" argument would be demonstrably false. Plaintiff's counsel carefully audited their time to remove any charges that were unnecessary, duplicative, excessive or otherwise. (Shahian Decl. ¶ 60, Ex 30.) Here, a review of the time records shows that SLP litigated economically and efficiently.

Indeed, historically, where courts have reviewed SLP's billing records, they determine that counsel litigated efficiently and without duplication. *See, e.g., Zargarian v. BMW of N. Am.*, 442 F. Supp. 3d 1216, 1228-29 (C.D. Cal. Mar. 3,

2020) (awarding plaintiff's counsel, including SLP, entire requested lodestar and observing that "the Court d[id] not take issue with Plaintiff counsel's staffing decisions; from the billing records, it is clear that there was a strict division of labor between the firms, and the Court finds no evidence of duplicative work between the firms."); *Zomorodian v. BMW of N. Am.*, 2019 WL 6534513 at *8 (C.D. Cal. July 23, 2019) ("[T]he Court has reviewed the hours billed with care and has determined that most of the hours billed by the 13 different attorneys have not been duplicative."); *Jurosky v. BMW of N. Am., LLC*, 2020 WL 5033584, at *4 (S.D. Cal. Aug. 25, 2020) (Shahian Decl. ¶ 25, Ex. 18) (in case involving 16 different attorneys at three different law firms, including SLP, finding that "the number of attorneys and hours worked [was] reasonable[,]" on the grounds that just two attorneys billed about 62% of the time submitted, "[o]ther courts have not faulted the plaintiff for utilizing a large number of attorneys at multiple firms[,]" "the use of a large number of attorneys in Song-Beverly Act cases appears relatively common[,]" "the billing records d[id] not show that a significant amount of time was unreasonably spent getting over a dozen attorneys up-to-speed on this case[,]" "this case involved a not insignificant amount of discovery, motions practice, and settlement discussions[,]" "there [was] no obvious indication that a fewer number of attorneys would have generated significantly fewer hours[,]" "Plaintiff submit[ted] a declaration from SLP's founding partner, Payam Shahian, stating that each billing entry was contemporaneously recorded, then audited by Mr. Shahian, and in multiple cases reduced or eliminated," and "BMW d[id] not dispute … that [the three law firms] 'routinely work on BMW cases together' and 'in the same distinct roles.' "). (*See also* Shahian Decl. ¶ 18 Ex. 11 [Fee Motion Order in *Shepard v. BMW*, Los Angeles Superior Court Case No. BC622506] at 4 ["Based on its review of the evidence presented (including the work and time entries on the attorney's bills), the court finds that the billing entries in Shepard's attorneys' bills do not evidence inefficient or unreasonable billing, duplication of effort, padding of time

entries, over-conferencing or multiple attendance by attorneys at the same court functions, as a result of the staffing and division of labor amongst Shepard's attorneys on this case."].)

### C.    A Lodestar Multiplier Enhancement of 1.35 is Warranted

The lodestar amount, once determined, can be increased by a "multiplier enhancement" that is based on several factors, including: (1) the risks presented by the litigation; (2) the novelty and difficulty of the legal and factual issues involved; (3) the results obtained on behalf of the plaintiff; and (4) the skill *exhibited* by counsel. *See, e.g.*, *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 556 (2009); *In re Vitamin Cases*, 110 Cal. App. 4th 1041, 1052 (2003); *Graciano*, 144 Cal. App. 4th at 154. *See also Reynolds v. FCA Motor Co.*, No. A154811, 2020 WL 1921742, at **2, 4 (Cal. Ct. App. Apr. 21, 2020) (published) (upholding trial court award in SBA lemon law matter of $201,891 lodestar and 1.2 multiplier "based on the following factors: the complexity of the factual issues, counsel's extensive experience in this type of litigation, and '[i]n litigating these types of cases with a large corporate defendant such as FCA, many attorneys may decline to represent plaintiff due to the financial resources of defendant and the prospect of long and hard fought litigation.'"); *Santana v. FCA US, LLC*, 2020 WL 6261439, at *10 (Cal. Ct. App. Sept. 29, 2020) (affirming an award of over a $500,000 in attorney fees that included multiplier of 2.0 in lemon law case where the plaintiff prevailed). "[T]he fact that counsel seeks a multiplier as a component of its fee request … is not itself a proper factor in determining the reasonableness of sought-after fees. In fact, it is not unusual for counsel to ask for a multiplier in contingent fee cases as this one." *Etcheson v. FCA US LLC*, 30 Cal. App. 5th 831, 851 (2018). Based on the analysis of these factors set forth below, a multiplier of 1.35 (or $28,498.05) should be applied here.

####   1.    Plaintiff's Counsel Obtained an Excellent Outcome

"The 'results obtained' factor can properly be used to enhance a lodestar

15

calculation where an exceptional effort produced an exceptional benefit." *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 582 (2005). Here, Plaintiff's counsel achieved an excellent outcome: $37,660.02 awarded by a unanimous jury verdict, which exceeds BMW's lowball offer. This is, by any measure, an outstanding result. The recovery is particularly impressive when compared against BMW's starting position: Prior to litigation, BMW refused even to repurchase the Vehicle. Indeed, BMW did not even offer anything until seven days remaining to the start of trial. *See In re Consumer Privacy Cases*, 175 Cal. App. 4th at 556 (holding that courts may increase lodestar by taking into account quality of representation and results obtained).

2.     The Risks Posed by This Litigation Were Substantial

One factor considered in awarding a multiplier is the risk of non-recovery or delayed recovery that counsel shouldered in taking on the case. *See Ketchum v. Moses*, 24 Cal. 4th 1122, 1138 (2001) ("The lodestar adjustment approach … allows a court awarding attorney fees to include a fee enhancement for the purpose, e.g., of compensating the attorney who agreed to undertake such representation at the risk of nonpayment or delayed payment …."). "A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases." *Id.* at 1333 (quoting Leubsdorf, *The Contingency Factor in Attorney Fee Awards*, 90 Yale L.J. 473, 480 (1981)). *See also Cazares v. Saenz*, 208 Cal. App. 3d 279, 287-88 (1989) (noting that contingency-based fee "may properly provide for a larger compensation than would otherwise be reasonable" given the "economic considerations separate and apart from the attorney's work on the case."). *See Yi v. BMW of N. Am., LLC*, 805 Fed. Appx. 459, 462 (9th Cir. 2020) (District Court did not violate vehicle owner's procedural due process rights by entering summary judgment on statute of limitations issue even though no motion was pending, where district court gave

16

owner notice of the statute of limitations bar, and it provided owner a meaningful opportunity to be heard through supplemental briefing and a hearing).

Here, the risk of non-recovery in litigating Lemon Law cases against BMW is more than merely academic. As noted above, BMW litigates such cases in a scorched-earth fashion. BMW typically does not offer to repurchase a vehicle prior to litigation, even though it has an affirmative obligation to do so. Then once a case is filed, BMW attempts to terminate the case through a lowball or invalid Rule 68 offer, a motion for summary judgment, or win at trial.

In short, litigating against BMW carries tangible risks, and a multiplier is thus more than justified. *See In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 556 (2009) (in determining whether to award a multiplier, a court may look, among other facts, to the risks presented).

### D.    Plaintiff is Entitled to Costs and Litigation Expenses

In addition to recovering attorney fees, Plaintiff is also entitled to recover all of the costs *and expenses* reasonably incurred in prosecuting the case. Civ. Code § 1794(d). Inclusion of the word "expenses" in Civil Code section 1794(d) reveals that items beyond statutory costs enumerated under Code of Civil Procedure section 1033.5 are recoverable. *Jensen v. BMW of N. Am., LLC*, 35 Cal. App. 4th 112, 137-38 (1995) (examining Legislative history of SBA to determine that "costs and expenses" language to be interpreted broadly to include such things as filing fees, expert witness fees, marshal's fees, etc., to "open the litigation process to everyone."); *Warren v. Kia Motors Am., Inc.*, 30 Cal. App. 5th 24, 42-43 (2018) (finding that the trial court abused its discretion in excluding trial transcript costs from plaintiff's cost award, and holding that trial transcripts, though not ordered by the court or enumerated in section 1032, were nonetheless recoverable under section 1794(d)). "Expenses" includes all expenses not part of overhead and ordinarily billed to paying clients regardless of whether recoverable under § 1033.5. *Bussey v. Affleck*, 225 Cal. App. 3d 1162 (1990); *Arntz*

*Contracting Co. v. St. Paul Fire & Marine Ins. Co.*, 47 Cal. App. 4th 464, 491 (1996) (holding litigation expenses far broader than costs). *See also Scott v. Ford Motor Co.*, 2020 WL 8125665, at *3 (C.D. Cal. Nov. 24, 2020) ("California law provides that prevailing plaintiff can recover expert witness fees under section 1794(d).") (quoting *Zomorodian v. BMW of N. Am.*, LLC, 332 F.R.D. 303, 307 (C.D. Cal. 2019)). "Defendant objects that these costs are not allowable under the Local Rules. But because the Court applies Section 1974(d), Plaintiff's recovery is not limited to taxable costs under the Local Rules."[9] *Scott*, 2020 WL 8125665, at *3.

Accordingly, the Court should order BMW to reimburse Plaintiff's $22,686.01 litigation costs and expenses. (*See* Shahian Decl. ¶ 63.)

## IV. CONCLUSION

For the reasons stated, the Court should order BMW to pay a total amount of $272,577.86. This amount consists of (1) $181,031.00 in attorney fees for Strategic Legal Practices, APC ("SLP"); (2) a 1.35 multiplier enhancement on the attorney fees (or $63,360.85); (4) $22,686.01 in costs incurred by SLP; and (4) an additional $5,500.00 for Plaintiff's counsel to review Defendant's Opposition, draft the Reply, and attend the hearing on this Motion (though counsel expects to incur over $5,500.00 as reasonably anticipated to review the Opposition, draft the Reply, and attend the hearing on this Motion.

Dated: April 22, 2022      By: /s/ Christine J. Haw
                     Christine J. Haw
                     Attorneys for Plaintiff,
                     Joseph Gamaty

---

[9] Plaintiff is separately filing a Bill of Costs.

Plaintiff's Motion for Attorney Fees - Case No.: 2:21-cv-01063-RGK-AFMx